UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

RIGOBERTO ARZATE-MIRANDA,

    Petitioner,

V.

ROBERT FARLEY, Warden,
USP-Big Sandy,

    Respondent.

Civil Action No. 7:11-CV-116-KKC

**MEMORANDUM OPINION
AND ORDER**

\*\*    \*\*    \*\*    \*\*    \*\*

Rigoberto Arzate-Miranda is a former federal inmate[1] who was confined for a period of time in the United States Penitentiary-Big Sandy ("USP-Big Sandy") in Inez, Kentucky. While there, Arzate-Miranda, proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging a September 7, 2010, prison disciplinary conviction at a federal prison in Texas, where he was confined prior to his transfer to USP-Big Sandy, and the resulting loss of 27 days of good time credit to his sentence. [R. 1] In this habeas petition, Arzate-Miranda also asserted claims related to conditions of his confinement at USP-Big Sandy.

The Court conducted the required preliminary screening of Arzate-Miranda's habeas corpus petition. For the reasons stated in the Memorandum Opinion and Order of October 16, 2013, the Warden was directed to respond to Arzate-Miranda's claims asserted in his habeas petition. [R. 37] The Warden has filed his response [R. 43]. Having reviewed the

---

[1] Per the Warden's response, Arzate-Miranda's projected release date was February 9, 2014. See Declaration of Carlos J. Martinez, p. 2 [R. 43-1, Page ID# 390]. Arzate-Miranda's actual release date is unknown to the Court; however, Arzate-Miranda has been released and is no longer in custody of the Federal Bureau of Prisons (BOP). See www.bop.gov/inmateloc/ (last checked February 5, 2015). Since he has not notified the Court of his present address, his whereabouts are unknown to the Court.

1

Warden's response, the Court will dismiss Arzate-Miranda's habeas petition for failure to exhaust his administrative remedies prior to filing same.

## BACKGROUND

### I. Disciplinary Charge, Conviction, and Administrative Appeals

On August 27, 2010, while Arzate-Miranda was housed at the Federal Correctional Complex in Beaumont, Texas ("FCC-Beaumont"), he was charged in Incident Report #2059499 with assaulting another person, a Code 101 violation.[2] Arzate-Miranda was placed in Administrative Detention pending an investigation of the incident. On August 28, 2010, he was provided with a copy of the Incident Report.

### A. Investigation of the Incident Report

On August 28, 2010, the Incident Report was investigated. Petitioner was advised of his rights and was provided with an opportunity to provide a statement. He stated to the investigating Officer: "I didn't assault the officer, I was only reacting to him grabbing my shoulders from behind, by turning around quickly and pushing his hands from off me. [Incident Report - 2059499 – August 27, 2010 - Section III, Investigation; R. 43-4, Page ID# 400]. The investigating officer concluded that the charge was warranted as written and referred it to the Unit Disciplinary Committee ("UDC") for a hearing. *Id.*

### B. UDC Hearing

On August 30, 2010, an UDC hearing was held on the Incident Report. The UDC referred

the charges to the DHO for further hearing because sanctions for 100 level codes cannot be imposed at the UDC level. See Declaration of Carlos J. Martinez, ¶ 5, Attachment C,

---

[2] A Code 101 violation is defined as follows: assaulting any person (includes sexual assault) or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or carried out by the inmate. Prohibited Acts and Disciplinary Severity Scale, Greatest Category [R. 43-6, Page ID# 408].

Incident Report - Section II - Committee Action [R. 43-4, Page ID#401]. On August 30, 2010, Petitioner was advised of his rights before the DHO and was given notice of the hearing before the DHO. Petitioner was asked whether he would like to have a staff representative and/or present a witness at the hearing. However, Petitioner declined to have a staff representative and/or present a witness at the hearing. *Id.*

**C.     DHO Hearing**

On September 2, 2010, the DHO hearing was held. Prior to the hearing the Petitioner was advised of his rights. At the hearing, Petitioner denied the charges and denied assaulting the officer. Petitioner stated that somebody grabbed him from behind and that is all he remembers from the incident. During the hearing, the DHO considered the following evidence: 1) the Incident Report; 2) the Investigation; 3) the statements from the Petitioner; and 4) the statements from staff who witnessed the incident. Upon the DHO's review of the evidence, he concluded that the greater weight of the evidence supported a finding that Petitioner had committed a less serious offense, the prohibited act of assaulting any person in violation of Code 224,[3] and the Incident Report was amended to reflect the DHO's finding of the less serious offense.

The DHO sanctioned the Petitioner to a Disciplinary Transfer, a loss of commissary, visitation and telephone privileges for 6 months, and a loss of 27 days of good time credits. On September 7, 2010, Petitioner was advised of his right to appeal the DHO decision within 20 calendar days from the receipt of the DHO report through the Administrative Remedy process.

---

[3] A Code 224 violation is defined as follows: Assaulting any person (charged with this act only when less serious physical injury or contact has been attempted or carried out by the inmate. Prohibited Acts and Disciplinary Severity Scale, Greatest Category [R. 43-6, Page ID# 409].

On September 8, 2010, Petitioner was provided with a copy of the DHO report. [R. 43-5, Page ID# 404].

**D.     Administrative Remedies**

**1.     Administrative Remedy No. 607860-R1**

Petitioner timely appealed his disciplinary conviction to the South Central Regional Office ("SCRO"). In this appeal, Petitioner stated that he was filing a "sensitive" complaint for a violation of his constitutional rights by Officer Lovelace because he filed Incident Report 2059499 as code 101 violation, and the DHO found him guilty of code 224 violation. Petitioner claimed that Officer Lovelace had violated his Eighth Amendment rights and that the DHO had violated his Fifth, Sixth, and Fourteenth Amendment rights for finding him guilty "of any charge". Petitioner also asserted claims of discrimination, unprofessional conduct (misconduct) and a hostile environment. The Appeal was rejected because the issues raised were found not to be sensitive, and Petitioner was notified that he should file his request or appeal at the appropriate level via regular procedures. See Declaration of Carlos J. Martinez, ¶ 8, Attachment F, Administrative Remedy Generalized Retrieval [R. 43-7, Page ID# 412].

**2.     Administrative Remedy No. 607860-A1**

Instead of refiling his appeal at the SCRO as a regular appeal (instead of a "sensitive appeal"), as he was advised to do in the Rejection Notice, Petitioner filed an appeal to the BOP's Central Office, which received the appeal on November 29, 2010. In this appeal, Petitioner appealed the September 2, 2010 DHO Hearing (Incident Report # 2059499) and sanctions. On December 29, 2010, the BOP's Central Office rejected the appeal because it was submitted to the wrong level. Petitioner was instructed to file the appeal at the Regional Office level. See Declaration of Carlos J. Martinez, ¶ 8, Attachment F, Administrative Remedy Generalized Retrieval [R. 43-7, Page ID# 414].

There is no evidence of record that Petitioner refiled his appeal with the Regional Office (SCRO).

## II.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

Although 28 U.S.C. §2241 contains no statutory exhaustion requirement, federal courts consistently require federal prisoners to fully exhaust the BOP's available administrative remedies before filing a petition seeking habeas corpus relief pursuant to Section 2241. In particular, the Sixth Circuit has held that a §2241 applicant is first required to exhaust his administrative remedies through the BOP's administrative grievance procedures prior to filing a habeas corpus petition. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) *per curiam*. *See also Hacker v. Fed. Bureau of Prisons*, 2006 WL 2559792, 5 (E.D. Mich. 2006) ("The Sixth Circuit has approved of the general principle that the Bureau of Prisons should be allowed the opportunity to consider the application of its policy to a habeas petitioner's claims before the federal courts entertain them.") *citing Urbina v. Thoms*, 270 F.3d 292, 295 n.1 (6th Cir. 2001); *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231-32 (6th Cir. 2006); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423 (6th Cir. 2000)(A federal prisoner must first exhaust his available administrative remedies before filing a § 2241 petition); *United States v. Oglesby*, 52 F. App'x 712, 714, (6th Cir. 2002) *citing United States v. Wilson*, 503 U.S. 329, 335 (1992); *Grant v. U.S. Eastern District Court of Kentucky*, 2007 WL 4328037 (E.D. KY 2007) (Federal prisoners are required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241); *Irvin v. Federal Bureau of Prisons*, 2009 WL 1616676 (W.D. KY 2009).

The Supreme Court has identified several sound policy reasons for the mandatory exhaustion requirements. These include: (1) to avoid premature interruption of the

administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative process could weaken the effectiveness of an agency by encouraging people to ignore its procedures. *McKart v. United States*, 395 U.S. 185, 193-195 (1969); *Weinberger v. Salfi*, 422 U.S. 749 (1975). Thereby, absent exhaustion of administrative remedies judicial review is not available under 28 U.S.C. §2241. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under §1983").

In particular, administrative exhaustion permits the agency to review and possibly correct its own errors without court intervention and facilitates any potential judicial review. *See Bethea v. DeWalt*, 2010 WL 55924 (E.D. KY 2010) (the exhaustion requirement is designed to ensure not only that the agency be given the opportunity to review its conclusions short of litigation, but also that the district court be provided a complete record upon which to review the agency's final action.); *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991) (stating that petitioner was "demanding that the federal court order the agency to correct an error rather than permitting the agency to do so on its own."); *Barney v. Correctional Medical Services, Inc.*, 2009 WL 3711612, 12 (W.D. Mich. 2009) ("Proper exhaustion often results in the creation of an administrative record that is helpful to the court."); *Spencer v. Martinez*, 2009 WL 454474, 1(M.D. Pa. 2009) (administrative exhaustion of claims raised under §2241 is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2)

6

permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.") *quoting Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761-62 (3rd Cir. 1996).

The requirement that administrative remedies be exhausted prior to filing suit mandates that those remedies must be exhausted properly and within the time frames required by the remedy process. *Woodford v. Ngo*, 548 US at 92-94. The BOP has established a three-tiered Administrative Remedy Program whereby an inmate may progressively redress grievances at the institutional, Regional, and Central Office (national) levels. *See generally* 28 C.F.R. § 542.10, *et seq*.[4]

In the present case, the Administrative Remedies record reveals that the Petitioner failed to properly file and exhaust his appeal of the DHO proceedings. See Declaration of Carlos J. Martinez, ¶ 8, Attachment F, Administrative Remedy Generalized Retrieval [R. 43-7, Page ID# 412]. Initially, he filed a "Sensitive" BP-10 alleging a violation of his constitutional rights by Officer Lovelace. Within the allegations against Officer Lovelace, the Petitioner interjected an allegation that the DHO had violated his Fifth, Sixth, and Fourteenth Amendment rights for finding him guilty "of any charge" and also raised vague allegations of discrimination, unprofessional conduct (misconduct) and a hostile environment. The BOP's Regional Office rejected Petitioner's "Sensitive" BP-10 because

---

[4]After the inmate has attempted to resolve his respective matter of concern informally, an initial request is made to the Warden at the institution level. If the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director within 20 days of receiving the Warden's response. See 28 C.F.R. § 542.15. If he is dissatisfied with the Regional Director's response, he may appeal to the General Counsel in the BOP's Central Office, Washington, D.C., within 30 days of receiving the Regional Director's response. *Id*. The Administrative Remedy Program allows an inmate to seek formal review of an issue relating to any aspect of his or her confinement, to include appeals of disciplinary decisions by the DHO. 28 C.F.R. § 542.10. An appeals from a DHO decision does not require an initial filing at the institutional level and is initially submitted to the Regional Director for the region where the inmate is located at the time of filing. 28 C.F.R. 542.14(d)(2).

the issues raised were found not to be sensitive. See Declaration of Carlos J. Martinez, ¶ 8, Attachment F, Administrative Remedy Generalized Retrieval [R. 43-7, Page ID# 412].

BOP Program Statement 1330.17, Administrative Remedy Program, provides in pertinent part that:

> (1) Sensitive Issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

Thus, Petitioner's initial Appeal (BP-10) was rejected because the issues raised were found not to be sensitive. Petitioner was notified that he should file his request or appeal at the appropriate level via regular procedures. On November 29, 2010, the Petitioner filed a BP-11, appealing the DHO Hearing (Incident Report # 2059499) and sanctions; the BOP's Central Office rejected that appeal because it was submitted to the wrong level. Petitioner was instructed to file the appeal at the Regional Office level. However, Petitioner failed to cure the filing and resubmit his appeal at the appropriate level. Once the administrative remedies were rejected, Petitioner did not properly pursue them any further, nor did he attempt to properly exhaust them. See Declaration of Carlos J. Martinez, ¶ 8, Attachment F, Administrative Remedy Generalized Retrieval [R. 43-7, Page ID# 412].

Consequently, it is clear that Petitioner has not "properly" exhausted his challenge to his disciplinary conviction and sanctions. Neither the SCRO, nor the BOP's Central Office, has addressed his Fifth and Eighth Amendment challenges on the merits. Petitioner's submissions were rejected due to procedural deficiencies that needed to be

8

corrected. He was informed of the deficiencies and how to correct them, but he failed to correct them. In *Woodford v. Ngo, supra*, the Supreme Court held that exhaustion of administrative remedies must be done "properly", which means going through all the steps that the agency holds out, obeying all directions, and adhering to all deadlines set by the administrative rules. *Woodford v. Ngo*, 548 U.S. at 90. BOP regulations provide that the administrative remedy coordinator at any level may reject and return to an inmate any request or appeal that does not meet the requirements of the administrative remedy program. 28 C.F.R. §542.17(a); BOP Program Statement P1330.16, at 9. A rejection of an administrative remedy is not the same as the BOP having ruled on the merits of an administrative remedy. A prisoner's failure either to complete the exhaustion of administrative remedies and/or to cure the deficiencies with his administrative remedies constitutes a failure to exhaust. *Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002) (inmate failed to exhaust available remedies when he did not take advantage of opportunity to fix grievance that was rejected for procedural reason); *Jones v. Wilson*, 2009 WL 3211512, 2-3 (E.D. KY 2009) (habeas petitioner did not properly appeal his disciplinary conviction where, during the administrative remedy process, he failed to cure the deficiency set forth in the BOP's rejection notice); *Odom v. Helton*, 2013 WL 4012889, 8 (E.D. KY 2013) (failing to cure the noted deficiencies, and resubmitting the two previously rejected separate grievances, the petitioner abandoned the state grievance process and failed to exhaust any of his purported claims).

In the present action, Petitioner failed to properly file his Administrative Remedy, correct deficiencies, and properly exhaust the appeal of his DHO Hearing pursuant to the requirements of the PLRA. He initially filed his appeal as "Sensitive" and included allegations that were unrelated to the DHO hearing. Thereby, his submission was rejected and returned without a response on the merits. He was provided with opportunities to cure

and properly resubmit his DHO appeal, but failed to do so, choosing instead to directly file the present 2241 habeas petition. Arzate-Miranda has successfully exhausted an *unrelated* DHO Hearing appeal (Administrative Remedy No. 721355) demonstrating that he had a proper understanding of the exhaustion procedures. See Declaration of Carlos J. Martinez, ¶ 8, Attachment F, Administrative Remedy Generalized Retrieval [R. 43-7, Page ID# 412].

In conclusion, 42 U.S.C. 1997e(a) requires a prisoner challenging conditions pursuant to 42 U.S.C. 1983, *Bivens*, or other federal law to properly exhaust all available administrative remedies before filing suit in federal court. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Chamber v. Michigan*, 2012 WL 718912 (W.D. Mich. 2012) (After the PLRA became effective prisoners must first exhaust administrative remedies). Therefore, Arzate-Miranda's habeas petition must be dismissed for failure to exhaust his administrative remedies.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. Rigoberto Arzate-Miranda's 28 U.S.C. § 2241 petition for a writ of habeas corpus [R. 1] is **DENIED** and **DISMISSED** for failure to exhaust his administrative remedies.

2. The Court will enter an appropriate judgment.

3. This matter is **STRICKEN** from the active docket.

Dated February 9, 2015.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY